Jesús M. Rossy, Plaintiff and Appellant, *v.* Rafael del Valle-Zeno, Defendant and Appellee.

No. 3665. Argued June 26, 1925.—Decided November 10, 1925.

1. LEASE—CONTRACT—CONSIDERATION—QUARRY.—A contract whereby one party leased to the other a piece of land as a stone quarry and whose consideration was stipulated in part as monthly payments regardless of any removal of stone and in an additional aliquot sum for each cubic meter of stone if the quantity quarried and removed should exceed a specified amount and providing for the manner of determining the amount of stone that could be removed by the lessee, is in its nature a lease contract.

2. ID.—ID.—PRODUCTS—USE AND ENJOYMENT.—The words "enjoyment" and "use" employed in section 1446 of the Civil Code have not the same meaning and are used to denote the difference between a lease and a sale, for the latter word does not empower the lessee to dispose of the premises and the former permits him to appropriate to himself the products. The right to the profits has been extended within the meaning of the lease to the appropriation of the products of the thing, as in the so-called mining industries.

3. ID.—ID.—RETURN OF LEASED PROPERTY.—The provision of section 1464 of the Civil Code that the lessee must return the property at the termination of the lease in the same condition in which he received it, is not imperative, but of a supplementary nature, and may be revoked or modified at the will of the contracting parties.

4. ID.—ID.—CONSIDERATION.—The fixed price to which section 1446 of the Civil Code refers means a price that may be determined or estimated according as it is money or its equivalent.

5. ID.—ID.—ID.—The addition to the consideration of the lease of a property for quarrying stone of an aliquot sum for each cubic meter in excess of a specified amount, though it renders the apprehension of the consideration irregular, is a method which not only does not change the name which the parties gave to the contract, but which may coexist with the lease and the mode of payment is not thereby rendered complicated nor intricate.

6. ID.—ID.—An agreement of the parties to the effect that the lessee is bound to use the leased premises only for the extraction of stone and that no one of them may carry on the same industry, is a licit agreement which in no way changes the essence of the lease contract.

7. ID.—ID.—RESCISSION—UNLAWFUL DETAINER.—The provision of section 1459 of the Civil Code, which relates to the causes for rescinding the lease contract, does not limit or alter the action of unlawful detainer when the violation of any of the conditions gives a cause for such action and rather coexist with that action.

8. ID.—ID.—ELECTION OF REMEDY—SUBSTITUTION.—The lessor may elect the proceeding for obtaining a rescission of the lease contract, either resorting to the summary action of unlawful detainer, or the more ample one of an ordinary action, and when the election has been made the court has no power to substitute his right of action.

Second District Court of San Juan, M. Rodríguez Serra, J. Judgment for the defendant in unlawful detainer. *Reversed* and *remanded*.

*Eduardo Acuña, Jesús M. Rossy* and *Luis Janer* for the appellant. *Jacinto Texidor* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is a summary action of unlawful detainer. The complaint sets up two causes of action. The first alleges non-performance of certain conditions of the contract and the second default in payment of the rent.

The action was prosecuted according to the special proceedings in unlawful detainer, but it is noted that during the trial the time for the submission of evidence was not limited and both parties were given ample opportunity to examine their evidence.

The trial judge, however, did not weigh the merits of the evidence but limited himself to considering only the technical point which he deemed should be decided first, referring to the nature of the contract involved in the action and holding that it was not a contract of lease, for which reason he dismissed the complaint so that the parties might ventilate the merits of the case in a plenary action. Nevertheless, it is strange that the parties had joined issue on the understanding that it was a contract of lease, for in his answer the defendant only denied the material facts of the complaint and set up new defenses in no way related to the classification or name of the contract, raising no objection to the special proceeding that had been elected by the plaintiff.

[1] The written contract introduced in evidence does not differ from its narration in the complaint. The contract reads that the plaintiff leased to the defendant a piece of land of 5½ acres as described by metes and bounds. Under the second clause the lessee should use the piece of land "for the extraction of stone for his own use and for sale in any of its forms, in blocks or squares, in bulk crushed and pulverized . . .", etc. Under the fourth clause it was agreed that the compensation that the lessee should make to the lessor should be established on the basis of "quarry fees" in the manner and proportion specified in clause five which reads as follows:

"Fifth: The 'Quarry Fees' aforementioned shall consist in the payment by Mr. Del Valle Zeno to Mr. Rossy of a specified sum of money for each cubic meter of stone used for sale by the former, according to the following schedule:

"A.—If the extraction of stone should amount to four hundred cubic meters during each month or a less quantity or even if no extraction should be made, Mr. Del Valle Zeno shall pay to Mr. Rossy the sum of one hundred dollars for each month, this payment to be made within the first five days of the month following the ex-

traction and beginning to count from the date of the execution of this contract signed by both parties.

"B.—If the extraction should be made in quantities of more than four hundred cubic meters, then Mr. Del Valle Zeno, in addition to the one hundred dollars fixed in the foregoing paragraph, shall pay to Mr. Rossy ten cents for each cubic meter of stone which over and above the four hundred meters fixed in the foregoing paragraph shall be used for sale by Mr. Del Valle Zeno, payment to be made also within the first five days of the month following the extraction, counting from the date of the signing of this contract by both parties."

Clause six provides the manner of verifying the number of cubic meters of stone used by the lessee, and for that purpose "the representative of Mr. Rossy shall keep daily notes of the stone removed according to the transportation vouchers or tickets which for each truck or any other vehicle leaving the property shall be delivered to him by Mr. Valle Zeno's representative," . . . . etc.

The reasoning in the opinion of the trial judge for classifying the contract under such terms as one of purchase and sale of stone is summarized thus: 1st, the property in question is a stone quarry and could not be cultivated or used for agricultural purposes or for cattle-raising; 2nd, the manner of using or enjoying it is not left to the free will of the so-called lessee and he is charged with a specific way of using it; 3rd, that the enjoyment or use mentioned in section 1446 of the Civil Code are terms implying continuity of existence of the thing used, and that in this contract the object is ultimately to sell, the owner definitely disposing of the thing which as to him ceases to exist; 4th, to establish as a meritorious question that the defendant, who is bound to use the property for the extraction of stone, has invested $30,000 in the installation of crushing machinery and other implements for the extraction of stone and in the purchase of trucks for hauling the stone to the market.

Following the opinion of the trial judge, the appellee maintains further in his brief that the contract is not one of lease because in it the indispensable condition which section 1464 of the Civil Code imposes on the lessee to return the property in the same condition in which it was received, can not be complied with, inasmuch as the removal and sale of stone is authorized and because the consideration has not the characteristics of rent because it was fixed as a share in the profits from the property.

The Civil Code does not define the meaning of lease in general. It says that a lease may be of things, works or services. Sec. 1445 (Comp. sec. 4551). And in a lease of things one of the parties thereto binds himself to give to the other the enjoyment or use of a thing for a specified time at a fixed price. Sec. 1446.

Manresa, in referring to a contract of lease and to the equivalent sections of the Spanish Civil Code, says that the legislators were careful not to venture a sole definition and instead of defining a lease in general, defined, on the one hand, the lease of things and, on the other hand, the lease of works and services. Vol. 10, pages 433 and 434.

It is seen, then, that in the Spanish Civil Code it was not sought to include anything new and the traditions based on the precedents of the Roman law as followed by the old Spanish legislation was preserved. In the work of Carlos Maynz on the Roman Law, translation by Pou and Ordinaz, Vol. 2, p. 255, we read the following:

"A lease presents a clear analogy with a sale; it may even be said to be the sale of the specified use of a thing or of a work. Therefore, the majority of the general rules are common to both contracts. And this is why a contract of lease requires the concurrence of the three conditions which we have mentioned in that of sale, *res, pretium, consensus.*"

In a similar sense Scaevola says: "We might say without fear of paradox that a lease is a temporary purchase

and sale of the right to the use and enjoyment of a thing belonging to another.'' Vol. 24, part 1, p. 402. And thus it may be understood that the points of contact which a lease has with a contract of purchase and sale is what causes confusion in certain cases. Besides, what we might call the ordinary type is not always adopted in leases. Sometimes certain special conditions are agreed upon which if they render the lease more complicated the contract on that account does not cease to be a lease if it were so understood and intended by the parties, the intention being shown at least by the name as such given by the parties to the contract. The commentators on the Roman Law used to describe those leases of a complex kind by the term *''locatio irregularis.''* But at present it seems that there are more justifiable reasons due to the intensity of economic life, so that the legal forms would be more diverse and irregular without changing the essence of the contract. It would not be possible to give a detailed account of the variety of forms that a lease may take, but ''wherever an exclusive appropriation legalized by law exists, although it be in the glacial Alps or in the deepest hole of a mine, in that place there is a thing susceptible of lease.'' Scaevola, Vol. 24, part 1, p. 394.

[2] The words ''enjoyment or use'' employed in section 1446 of the Civil Code in defining a lease of things and which the trial judge understood to involve the same meaning are those that point out the difference between a lease and a sale. It is not the same to use as to enjoy. The former does not authorize disposal, but only implies the use of the mere possession, that is, to obtain from the thing all the use and the service which may be had from it. The latter comes nearer to a sale because it permits the lessee to appropriate to himself the fruits or profits that may be produced. And this right to the profits is the one that has been enlarged within the meaning of a lease. By mental

habit it seems that we can only think of a lease under its ordinary aspect of use only, or to profit by appropriating to ourselves the agricultural or other products. The last meaning has been extended to the appropriation of the substance of the thing itself and this happens with the so-called extractive industries, such as the developing of mines, quarries, forests, hunting, fishing, etc. And nothing is found in the jurisprudence denying that such industries may be the object of a contract of lease.

[3] Now, it would seem clear, considering the nature of those extractive industries, that the property may not be returned as the lessee received it. This is the aspect of the case sustained by the appellee and which perhaps has confused the trial judge. The extractive matter, as the extraction of stone in this case, may extinguish the quarry, as the vein or lode in a mine may be exhausted, but the property is never extinguished. Besides, the provision of section 1464 of the Civil Code that the lessee shall return the property at the expiration of the lease in the same condition as he received it, is not imperative, but of a suppletory nature and may be ignored or modified at the will of the contracting parties. Manresa, vol. 10, p. 581.

[4, 5] On the other hand, the way in which the price has been fixed is discussed and the appellee contends that it has not the characteristics of a rent. The fixed price to which section 1446 of the Civil Code refers means a price that may be specified or estimated according as it involves money or its equivalent.

"The price, as a sale, must be true and certain consisting in a specified sum of money. Whenever it refers to a thing or to an act which produces fruits or other products, the rent may consist in an amount of the products, be it a quantity determined in an invariable way or consisting in a fixed share of the products." Work of Maynz cited.

In this case the consideration of the contract was fixed

in part by specifying the sum of $100 monthly, whether or not any stone was extracted. Besides, an aliquot amount for each cubic meter was added depending on the production in excess of a certain limit. Clause 5 of the contract, *supra*. Certainly this addition renders the apprehension of the price irregular, but rather it is a method more or less *sui generis* which does not change the name with which the parties wished to designate the contract and which may coexist with the lease. "If we were asked," says Scaevola, "what was the juridical nature of a contract wherein one of the parties gave the use and enjoyment of his estate in exchange for one hundred dollars, ten *almudes* of beans, fifty *fanegas* of wheat and the right to use the pasture of a field during the term of the contract, we should answer without any hesitation that it was a contract of lease." Scaevola, vol. 24, p. 404. On the other hand, it is not an element which renders the form of payment more intricate or complicated. By knowing the number of meters of stone extracted the operation can not be more simple; it is a matter of multiplication.

[6] Likewise, it is not a serious or strong argument that because the object to which the property should be devoted is charged upon the lessee and that the lessee and the lessor could not engage in the same business on other property, such a condition affects the true meaning of the lease. Section 1458, paragraph 2, provides that the lessee is bound to apply the thing to the use agreed upon, and the argument of the parties that the lessee is bound to use the property for the sole purpose of extracting stone and that neither of them can engage in the same industry, is a licit stipulation which in no way changes the essence of the contract of lease.

[7, 8] The method of rescinding the lease is also the object of contention. The complaint in the action of unlawful detainer was dismissed because it was held that it

did not involve a contract of lease and because, supposing that it did, the action of unlawful detainer was not the proper remedy for the reason that it was a lease with complex elements. We have refuted both contentions in discussing the nature of the contract itself. We will add, however, that section 1459 which relates to the causes for a rescission does not limit or alter the action of unlawful detainer when any non-performance of the conditions of the contract gives a right to the said special action, but rather coexists with it. That section reads:

"Sec. 1459.—If the lessor or lessee should not comply with the obligations mentioned in the preceding sections, they may request the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force."

The law establishing unlawful detainer proceedings, Act of March 9, 1905 (Comp. sec. 1625), although it refers to the causes for the action of unlawful detainer, was with the idea of fixing the jurisdiction of the courts that were to take cognizance of the summary proceeding, but in fact the causes specified in section 1472 of the Civil Code which gave the right to the action have remained in force. This is a proper matter for the Civil Code as substantive law, while the action therefrom derived should be regulated by the law of unlawful detainer as a law of procedure. Manresa, in regard to this point, says:

"The power to rescind obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him, says sec. 1124 of the Civil Code, and by means of an action of unlawful detainer the contract of lease is resolved or rescinded with a short proceeding and adequate to the nature of the matter." Commentaries on the Civil Code, vol. 10, p. 630.

And the same author on page 545, 2nd edition, of the same volume, continues:

"It must also be borne in mind that the provisions of section

1556 does not alter or limit the force of section 1569 which fixes the just causes for the action of unlawful detainer and that a comparison of one section with the other may not reasonably raise any question that might change the action of unlawful detainer which the lessor may bring against the lessee in the cases expressly authorized by law.''

Sections 1124, 1556 and 1569 cited are reproduced in the Revised Civil Code as sections 1091, 1459 and 1472, and they are as follows:

''Sec. 1091.—The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.''

''Sec. 1459.—If the lessor or lessee should not comply with the obligations mentioned in the preceding sections, they may request the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force.''

''Sec. 1472.—The lessor may judicially dispossess the lessee for any of the following causes:

''1. Upon the expiration of the conventional period or the one fixed for the duration of leases in sections 1480 and 1484.

''2. Default in payment of the price agreed upon.

''3. Infraction of any of the conditions stipulated in the contract.

''4. When the lessee employs the thing leased in uses or services not stipulated and which cause the same to be impaired, or when he does not comply, with regard to its use, with the provisions of number 2 of section 1458.''

The lessor is, therefore, the one who can elect the proceeding for obtaining a rescission of the contract of lease— either the summary proceeding of unlawful detainer or the more ample one of an ordinary action. It does not matter that the defendant had invested the sum of $30,000 in the industry, as made meritorious by the trial judge, in order to increase his business under the lease in that way. This is a mere incident which should not have impressed the trial judge, and if the lessee fails in any way to comply with the contract, the election of the remedy lies with the

lessor and the court has no power to substitute his right of action after his election is made. The trial judge erred, therefore, in dismissing the proceeding of unlawful detainer and in not considering the merits of the case.

The judgment appealed from should be reversed and the case remanded for further proceedings not inconsistent with this opinion.